**STATE OF HAWAII**, Plaintiff–Appellee, v. **SEGUNDO B. MATIAS**, Defendant–Appellant

NO. 15215

(CR. NO. 88–0692)

NOVEMBER 13, 1992

LUM, C.J., MOON, KLEIN, AND LEVINSON, JJ., AND RETIRED JUSTICE HAYASHI, ASSIGNED BY REASON OF VACANCY*

\*Retired Justice Yoshimi Hayashi, who heard oral argument in this case, was unavailable for signature when this opinion was filed. *See* HRS § 602–10 (1985).

## OPINION OF THE COURT BY MOON, J.

Defendant–appellant Segundo B. Matias (Matias) was charged with murder in the second degree for the shooting death of Lee Ann Kauhane (Kauhane). At trial, Matias argued that he was at most guilty of manslaughter because at the time he shot and killed Kauhane he was under the influence of an extreme emotional disturbance for which there was a reasonable explanation. Plaintiff–

appellee State of Hawaii (State) argued that Matias was not under the influence of extreme emotion at the time of the crime and introduced the expert testimony of Harold Hall, Ph.D. (Dr. Hall) to rebut the testimony of Matias' expert witness on this issue. Matias was convicted of murder in the second degree.

Matias now appeals, claiming that the trial court abused its discretion in admitting Dr. Hall's testimony. Matias also contends that there was insufficient evidence to rebut his claim to the extreme mental or emotional disturbance mitigation defense to murder. Because we find that both of Matias' claims lack merit, we affirm.

## I. BACKGROUND

On April 25, 1988, Matias shot and killed Kauhane while both of them were seated in his Volkswagen automobile parked outside the Kauhane family residence in Kaneohe. Matias was arrested in Los Angeles almost two years later, on March 11, 1990, and was returned to Hawaii for trial. He was charged with murder in the second degree under Hawaii Revised Statutes (HRS) § 707–701.5(1), place to keep firearm under HRS § 134–6, and carrying a firearm on person without a permit under HRS § 134–9.

At trial, Matias did not deny that he had shot and killed Kauhane. Instead, he argued that he was not guilty of murder because he had acted under the influence of an extreme emotional disturbance for which there was a reasonable explanation.

Under the Hawaii Penal Code, the crime of murder may be mitigated to manslaughter pursuant to HRS § 707–702(2), which provides:

> In a prosecution for murder in the first and second
> degrees it is a defense, which reduces the offense

to manslaughter, that the defendant was, at the time he caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.

HRS § 707–702(2) (Supp. 1991). In support of his manslaughter mitigation defense, Matias presented expert testimony by a psychologist, Sandra Paulson, Ph.D. (Dr. Paulson), who concluded, based on her examination of the pertinent records and her interviews with Matias, that he had killed Kauhane while under the influence of extreme emotional and mental stress.

Dr. Paulson noted that Matias and Kauhane had been lovers for several years prior to the killing. In the months immediately preceding the killing, Kauhane had been in the process of breaking off the relationship, and she had also started a separate relationship with another man, a fact known to Matias.

The State called Dr. Hall, also a psychologist, as a rebuttal expert witness, who testified that he had interviewed Matias and various other witnesses. He had also reviewed police reports, photographs, Matias' medical and dormitory records, grand jury transcripts, and information from California authorities as well as information obtained by Dr. Paulson.

Based on this information, Dr. Hall concluded that Matias was not under the influence of extreme emotion when he shot Kauhane. Specifically, Dr. Hall found significant indications that Matias had maintained a relatively high degree of self–control "before, during, and

after" the commission of the crime. Several times, in response to the State's questions, Dr. Hall gave his expert opinion as to whether Matias had been under the influence of an extreme emotional disturbance when he shot and killed Kauhane:

> [State]: Doctor, based on your expertise in the area of clinical psychology and forensic psychology and based on your review of the information that you obtained from this database, did you render an opinion within a reasonable psychological probability, as to whether or not the defendant, at the time of the commission of the crime in this case, whether or not the defendant was under extreme emotion?
>
> [Dr. Hall]: I did.
>
> [State]: What is your opinion?
>
> [Dr. Hall]: The opinion is that extreme emotion did not exist at that time.
>
>        \*   \*   \*
>
> [State]: Doctor, with regard to the testimony as to the defendant's perception of the events of the crime and your assessment of the self–control, did you render an opinion within reasonable bounds of psychological probabilities as to the organized or disorganized relationship between self–control and the defendant's perception?
>
> [Dr. Hall]: Yes.
>
> [State]: What's your opinion?
>
> [Dr. Hall]: That there is no extreme emotion. Self–control was intact and there was substantial taking of cocaine, that was voluntary.

Prior to Dr. Hall's testimony, the defense had objected, claiming that Dr. Hall's opinion regarding

Matias' degree of self–control was not relevant to the issue of "mental disturbance." The trial court overruled the objection and permitted the testimony. Following Dr. Hall's testimony, the defense moved to strike, again claiming that the issue of self–control at the time of the shooting was not relevant to the manslaughter mitigation defense. Matias argued that the question of self–control would only be relevant to issues of insanity or penal irresponsibility, and not to extreme emotion. Matias claimed that Dr. Hall's opinion was therefore prejudicially misleading and confusing and that it would hinder the jury's consideration of Matias' manslaughter defense.

The trial court denied the motion and admitted Dr. Hall's testimony into evidence, at the same time repeating a cautionary instruction to the jury it had issued prior to Dr. Hall's testimony: that the jury was to decide how much weight to give any evidence, and that "no witness can tell you what is a fact or what is not a fact."

Pursuant to a defense request, the trial court instructed the jury on the manslaughter mitigation defense under HRS § 707–702(2). Nevertheless, Matias was convicted of all three charged offenses and sentenced to life imprisonment with the possibility of parole (with a mandatory minimum of fifteen years) for the murder conviction and concurrent five year terms for the two firearms convictions.

Matias now appeals his murder conviction, claiming that the trial court abused its discretion in admitting Dr. Hall's expert opinion testimony because that testimony was principally focused on the question of Matias' self–control at the time of the killing and was thus irrelevant and prejudicially misleading. Matias also contends that there was no substantial evidence on which the jury could find that he was not under the influence of an extreme

emotional disturbance for which there was a reasonable explanation when he shot and killed Kauhane.

## II. **DISCUSSION**
### A.

Matias argues that the trial court should not have admitted Dr. Hall's expert opinion testimony into evidence. "[T]he general rule is that admissibility of expert testimony is a matter within the broad discretion of the trial judge, and his decision will not be overturned on appeal unless manifestly erroneous or clearly an abuse of discretion." *State v. Murphy*, 59 Haw. 1, 14, 575 P.2d 448, 457 (1978).

The trial court abuses its discretion when it " 'clearly exceed[s] the bounds of reason or disregard[s] rules or principles of law or practice to the substantial detriment of a party litigant.' " *State v. Hoopii*, 68 Haw. 246, 249, 710 P.2d 1193, 1195 (1985) (quoting *Clarkin v. Reimann*, 2 Haw. App. 618, 624, 638 P.2d 857, 861 (1981)). However, "[g]enerally, in determining whether the conclusions or opinions of an expert witness are admissible, the [trial] court must exercise a large measure of discretion with which an appellate court is reluctant to interfere unless that discretion has been manifestly abused to the prejudice of the complaining party." *State v. Rodrigues*, 67 Haw. 70, 73, 679 P.2d 615, 618, *appeal dismissed and cert. denied*, 469 U.S. 1078 (1984).

In the instant case, Matias contends that 1) because Dr. Hall's testimony focused on the question of Matias' self–control at the time of the killing, Dr. Hall's opinion was irrelevant and prejudicially misleading; and 2) the trial court should have refused to admit Dr. Hall's opinion. The State, on the other hand, argues that Dr. Hall's

testimony constituted a valid rebuttal to the defense's claim that Matias shot Kauhane while he was under the influence of an extreme emotional disturbance.[1]

The applicable case law leaves no doubt that the question of a killer's self–control, or lack of it, at the time of the killing is a significant, even determining, factor in deciding whether the killer was under the influence of an extreme emotional disturbance such that his conduct would fall under HRS § 707–702(2). In *State v. Russo*, 69 Haw. 72, 734 P.2d 156 (1987), this court discussed the origins of HRS § 707–702(2) and stated that

> [i]ts roots are lodged in the common law where a person who "kill[ed] another without malice aforethought, under the sudden impulse of passion, excited by provocation or other adequate cause, by the party killed, of a nature tending to disturb the judgment and mental faculties, *and weaken the possession of self–control of the killing party*, [was] not guilty of murder, but manslaughter."

*Id.* at 77, 734 P.2d at 159 (alteration in original) (citation omitted) (emphasis added). The *Russo* court went on to note that the modern doctrine is broader and less rigidly objective than the common law rule, but nowhere did the court suggest that the lack of self–control on the part of the killer is no longer a significant factor.

In *State v. Dumlao*, 6 Haw. App. 173, 715 P.2d 822, *cert. denied*, 68 Haw. 692, 715 P.2d 822 (1986), the

---

[1] Dr. Paulson opined that "Matias' *capacity to control his emotion* under stress was generally diminished as a result of his slight brain impairment and rigid thinking[.]" We agree with the State that Dr. Hall's opinion on self–control was relevant as it directly rebutted Dr. Paulson's testimony that Matias' emotions were essentially out of control.

Intermediate Court of Appeals (ICA) set forth a detailed examination of the history and doctrinal underpinnings of § 707–702(2) in an attempt to provide a clear interpretation of the statute. Construing the phrase "extreme mental or emotional disturbance," the ICA stated:

> "Extreme mental or emotional disturbance" sometimes is, but should not be, confused with the "insanity" defense. The point of the extreme emotional disturbance defense is to provide a basis for mitigation that differs from a finding of mental defect or disease precluding criminal responsibility. *The disturbance was meant to be understood in relative terms as referring to a loss of self–control due to intense feelings.*

*Id.* at 180, 715 P.2d at 828 (citation omitted) (emphasis added).

Later in the opinion, the ICA again stated that " 'extreme emotional disturbance is the emotional state of an individual who . . . has an extreme emotional reaction to [extremely unusual and overwhelming stress],[2] *as a result of which there is a loss of self–control and reason is overborne by intense feelings*[.]' " *Id.* at 181–82, 715 P.2d at 829 (citation omitted) (emphasis added).

Finally, in **State v. Pinero**, 70 Haw. 509, 778 P.2d 704 (1989), this court again commented on HRS

---

[2] We note that in **State v. Seguritan**, 70 Haw. 173, 766 P.2d 128 (1988), this court held that a person who invoked HRS § 707–702(2) was not required to show he or she had been exposed to "an extremely unusual and overwhelming stress." *Id.* at 174, 766 P.2d at 129. We explained that "the statute focuses . . . on the defendant's reaction to the stress, and requires only that the defendant be under the influence of extreme mental or emotional disturbance for which there is 'a reasonable explanation.' " *Id.*

§ 707–702(2) and indicated that the loss of self–control on the part of the killer was at the core of the court's definition. We stated, "[t]he offense, more accurately the mitigating defense, has been characterized as 'voluntary manslaughter [because it] involves the intentional [or knowing] killing of another while under the influence of a reasonably induced [extreme mental or] emotional disturbance . . . *causing a temporary loss of normal self–control.*'" *Id.* at 523–524, 778 P.2d at 714 (alteration in original) (citation omitted) (emphasis added).

Matias admits — indeed, he avers — that Dr. Hall's testimony concentrated on the degree of self–control that Matias displayed "before, during, and after" the shooting of Kauhane. Based on the foregoing clear authority, Matias is manifestly mistaken in arguing that the question of self–control on the part of the killer is not relevant to the issue of whether a murder should be mitigated to manslaughter under HRS § 707–702(2).

Dr. Hall's expert opinion testimony focused on the degree of Matias' self–control, which was obviously of significance to the manslaughter mitigation defense issue. The relevance of Dr. Hall's testimony was thus apparent; indeed, the trial court would have abused its discretion if it had *not* admitted Dr. Hall's expert opinion into evidence. Moreover, as the trial court repeatedly instructed, it was ultimately for the jury to decide how much weight to give Dr. Hall's opinion.

At oral argument on the instant appeal, counsel claimed that Dr. Hall's opinion was inherently misleading because the State, at trial, had asked him "whether or not the defendant was under extreme emotion," rather than using the exact phrase "extreme emotional disturbance." Matias contends that the presence or absence of extreme emotion in the defendant is not relevant to the question of

whether defendant was under the influence of an extreme emotional disturbance. Therefore, Matias argues, Dr. Hall's opinion that Matias lacked extreme emotion at the time of the killing could have misled the jury.

Matias' contention is completely untenable. The suggestion that the presence or absence of extreme emotion in the defendant at the time of the killing could not be relevant to the question of whether defendant was under the influence of an extreme emotional disturbance is illogical.

Based on the foregoing, we conclude that the trial court clearly did not abuse its discretion in admitting Dr. Hall's expert opinion testimony into evidence.

### B.

Matias also contends that there was insufficient evidence adduced at trial to allow the jury to find that he was not under the influence of an extreme emotional disturbance at the time of the killing. On appeal, the test for a claim of insufficient evidence is whether, viewing the evidence in the light most favorable to the State, there is substantial evidence to support the conclusion of the trier of fact. *State v. Ildefonso*, 72 Haw. 573, 576, 827 P.2d 648, 651 (1992); *State v. Tamura*, 63 Haw. 636, 637, 633 P.2d 1115, 1117 (1981). " 'It matters not if a conviction under the evidence as so considered might be deemed to be against the weight of the evidence so long as there is substantial evidence tending to support the requisite findings for the conviction.' " *Ildefonso*, 72 Haw. at 576–77, 827 P.2d at 651 (quoting *Tamura*, 63 Haw. at 637, 633 P.2d at 1117). " 'Substantial evidence' . . . is credible evidence which is of sufficient quality and probative value to enable a man of reasonable caution to reach a conclusion." *See id.* at 577, 827 P.2d at 651 (quoting *State v. Naeole*, 62 Haw. 563, 565, 617 P.2d 820, 823 (1980)).

After being properly qualified as an expert witness by the trial court, Dr. Hall provided the jury with extensive testimony[3] concerning his opinion that Matias displayed no significant loss of self–control and that Matias was therefore not under the influence of the requisite extreme emotional disturbance when he shot and killed Kauhane. Dr. Hall's testimony and his expert opinion certainly qualify as credible, probative evidence upon which a person of reasonable caution *could* rely to reach a conclusion, although it was for the jury to decide whether and to what extent it would rely on Dr. Hall's opinion.

Matias basically argues that because there was no premeditation involved in the killing, there was thus insufficient evidence to show that he was not under the influence of an extreme emotional disturbance. Matias claims that Dr. Hall's expert opinion presented no relevant evidence to rebut his manslaughter mitigation defense argument. He also claims that State presented insufficient evidence because "Dr. Hall's testimony that [Matias] had 'no extreme emotion' at the time he caused Kauhane's death did not serve to disprove that [Matias] was under the influence of an extreme emotional disturbance . . . at the time he caused Kauhane's death."

These contentions are without merit. Assuming, *arguendo*, that premeditation was absent here, such absence does not necessarily equate to the presence of an extreme emotional disturbance. Again, it is incomprehensible that Dr. Hall's testimony, if believed, could have any other effect *except* to "disprove" that Matias was under the influence of an extreme emotional disturbance.

---

[3] Dr. Hall testified for approximately one full day (spread over two trial days).

Although it is for the jury to determine the weight it will give expert testimony, "the findings of an expert are always entitled to serious consideration by the trier of fact." *State v. Summers*, 62 Haw. 325, 328, 614 P.2d 925, 928 (1980). The trial court correctly determined that Dr. Hall was a qualified expert witness. As such, his extensive testimony on the core issue of self–control as it relates to the extreme emotional disturbance component of HRS § 707–702(2), when viewed in the light most favorable to the State, clearly constituted substantial evidence to support the jury verdict in this case. Moreover, based on our review of the record, we agree with the State that there was substantial evidence in addition to Dr. Hall's testimony on which the jury could have based its verdict.

### III. CONCLUSION

We conclude that Dr. Hall was a properly qualified expert witness, and his opinion regarding the degree of Matias' self–control at the time of the killing was clearly relevant to the manslaughter mitigation defense issue; thus, the trial court did not abuse its discretion when it admitted and then refused to strike Dr. Hall's expert opinion testimony. Further, Dr. Hall's expert opinion testimony constituted substantial evidence upon which the jury could find that Matias was not under the influence of an extreme emotional disturbance at the time of the killing. Accordingly, we affirm Matias' conviction of murder in the second degree.

*Philip D. Bogetto* for defendant–appellant.
*Randall K. O. Lee*, Deputy Prosecuting Attorney, for plaintiff–appellee.