NO. 29679

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
TYLER CONDON, also known as: ALEX, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 07-1-1275)

MEMORANDUM OPINION
(By: Foley, Presiding Judge, Fujise and Leonard, JJ.)

Defendant-Appellant Tyler Condon (Condon) appeals from the February 2, 2009 judgment entered by the Circuit Court of the First Circuit[1] (circuit court), in which Condon was adjudicated guilty of Murder in the Second Degree, in violation of Hawaii Revised Statutes (HRS) § 707-701.5 (1993), and sentenced to life imprisonment with the possibility of parole.

Condon does not dispute that he stabbed his second cousin, Jake Hale ("Decedent"), early in the morning of July 4, 2007, and that Decedent bled to death from the stab wounds. Rather, Condon argued that the stabbing was justified as self-defense or was mitigated because he was under extreme mental or emotional distress (EMED).

On appeal, Condon alleges that the circuit court erred in instructing the jury. Condon also alleges that the deputy prosecutor trying the case made five statements during closing arguments that constituted misconduct.

After careful review of the issues raised, the arguments made by the parties, the record as presented in the circuit court, and the relevant case law, we resolve Condon's points on appeal as follows:

---

[1] The Honorable Karen S.S. Ahn presided.

Jury Instructions

Condon asserts, citing State v. Culkin, 97 Hawai'i 206, 216, 35 P.3d 233, 243 (2001), that the circuit court erred by rejecting self-defense as a third element in the Murder in the Second Degree and Reckless Manslaughter instructions. Unlike the instructions given in Culkin, the separate instruction on self-defense stated that the prosecution bore the burden of proving lack of self-defense in order to convict the defendant of murder in the second degree and reckless manslaughter.

Condon also alleges that the court's "decision to separately instruct the jury on self-defense . . . suggested that it was either secondary to, or less than important than, the establishment of the charged offense." Condon does not explain how his suggestion interferes with the proper application of the law of self-defense. In any event, the Hawai'i Supreme Court has upheld instructions that were nearly identical to those given here. State v. Van Dyke, 101 Hawai'i 377, 385, 69 P.3d 88, 96 (2003). Accordingly, the self-defense instruction given here was not erroneous.

Condon also objects to exclusion of a "no verdict" option from Court's Instruction No. 31,[2] but concedes he did not object to the instruction. Condon fails to show how the jury

---

[2] Instruction No. 31 reads:

You may bring in one of the following verdicts:

  1. Not guilty; or

  2. Guilty as charged; or

  3. Guilty of Manslaughter based Upon Extreme Mental or Emotional Disturbance; or

  4. Guilty of Reckless Manslaughter.

  Your verdict must be unanimous.

  After a verdict has been reached and your foreperson has signed and dated the verdict form, you will notify the bailiff, and court will be reconvened to receive the verdict.

(Emphasis added.)

would have been prevented from returning no verdict, when the jury instruction does not require the jury to bring in a verdict at all.

Given that the instructions were not "prejudicially insufficient, erroneous, inconsistent, or misleading[,]" we do not need to examine whether they were harmless beyond a reasonable doubt. State v. Nichols, 111 Hawai'i 327, 334-35, 141 P.3d 974, 981-82 (2006).

Closing Argument

"If defense counsel does not object at trial to prosecutorial misconduct . . . [w]e may recognize plain error" when the error committed affects substantial rights of the defendant. State v. Wakisaka, 102 Hawai'i 504, 513, 78 P.3d 317, 326 (2003) (internal quotation marks and citations omitted). In reviewing a prosecutor's comments for misconduct, the appellate court considers three factors: (1) the nature of the conduct, (2) "the promptness or lack of a curative instruction," and (3) "the strength or weakness of the evidence against defendant." Id., at 515, 78 P.3d at 328 (2003) (quoting State v. Clark, 83 Hawai'i 289, 304, 926 P.2d 194, 209 (1996) (internal quotation marks omitted)). If the conduct was improper, the court then asks whether the misconduct was harmless beyond a reasonable doubt, and if not, whether the misconduct was "so egregious as to bar reprosecution." State v. Maluia, 107 Hawai'i 20, 26, 108 P.3d 974, 980 (2005).

As a threshold matter, this court must first determine whether the prosecutor indeed committed misconduct. State v. Kiakona, 110 Hawai'i 450, 458, 134 P.3d 616, 624 (App. 2006). Of the five statements challenged by Condon, four statements fall within the bounds of permissible conduct, considering the wide latitude that the prosecutor is given to discuss, comment on and draw reasonable inferences from the evidence. State v. Mainaaupo, 117 Hawai'i 235, 253-54, 178 P.3d 1, 19-20 (2008). Appellant claims the following is the most damaging:

> Now, during the killing, [Condon] stabs [Decedent] multiple times causing his death. No injuries on [Condon]. No indication of extreme mental or emotional disturbance during the killing.
>
> When you have a case where a person is extremely emotionally disturbed, you have what is called overkill. They just keep stabbing and stabbing and stabbing. The person is dead and they keep stabbing because they lost it. They went out of control. He didn't have this in this case.

The State argues that the comment draws upon the relevant law on EMED, which states "that the question of a killer's self-control, or lack of it, at the time of the killing is a significant, even determining, factor in deciding whether the killer was under the influence of an extreme emotional disturbance such that his conduct would fall under HRS § 707-702(2)."[3] State v. Matias, 74 Haw. 197, 204, 840 P.2d 374, 378 (1992). The State contends that the prosecutor had "argued facts illustrating that there was no evidence [Condon] evinced a lack of self-control, either before the killing, during the killing or after the killing." The prosecutor's closing argument, however, gave one example of how "loss of control" might be exhibited -- "overkill" -- and then implied because there was no "overkill" here, the EMED defense would not apply. Insofar as the prosecutor's argument suggests the lack of "overkill" prohibits an EMED verdict, he misstated the law. Cf. State v. Espiritu, 117 Hawaiʻi 127, 142-43, 176 P.3d 885, 900-01 (2008) (holding prosecutor misstated the law when he implied "special relationship" must exist between complainant and defendant asserting EMED defense).

Although the nature and number of wounds inflicted

---

[3] HRS § 707-202(2) (Supp. 2009) states:

> In a prosecution for murder or attempted murder in the first and second degrees it is an affirmative defense, which reduces the offense to manslaughter or attempted manslaughter, that the defendant was, at the time the defendant caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the viewpoint of a reasonable person in the circumstances as the defendant believed them to be.

provides circumstantial evidence of a perpetrator's state of mind, see, e.g., State v. Ah Choy, 70 Haw. 618, 624, 780 P.2d 1097, 1101-02 (1989), they are not conclusive as to whether the perpetrator suffers an emotional disturbance. People v. Haskett, 801 P.2d 323, 332 n.5 (Cal. 1990) (noting that the "use of wounds or manner of killing has limited value" when inferring a defendant's mental state). "Overkill" is one of a variety of behaviors that indicates an EMED. See Harold Hall et al., Extreme Mental or Emotional Disturbance (EMED), 23 U. Haw. L. Rev. 431, 460-61 (2001) (describing "perseverative violence past the point where it is functional" as one of twelve behaviors that demonstrate diminished self-control). EMED manslaughter has been found where the killer inflicted a single stab wound, e.g., where there was no "overkill." See, e.g. People v. Mendez, 801 N.E.2d 382, 383-84 (N.Y. 2003). Conversely, many wounds may indicate that a murderer was not influenced by EMED, but instead committed a particularly brutal crime not warranting a mitigation defense. See People v. Roche, 772 N.E.2d 1133, 1139-40 (N.Y. 2002) (refusing EMED jury instruction to defendant who stabbed his wife more than a dozen times).

Most problematic here is that no testimony was presented from which the prosecutor could have premised his statement that "where a person is extremely emotionally disturbed, you have what is called overkill." Although the prosecution's expert witness opined that Condon did not stab Decedent in self-defense, the expert did not testify as to whether the physical evidence showed that Condon exhibited a lack of control. The medical examiner testified about the wounds on Decedent's body -- five major wounds to his torso, two of which would have been fatal if sustained alone, smaller scrapes and several bruises on his head, and superficial wounds to Decedent's left thigh. The medical examiner did not offer, nor was she asked to give, an opinion as to whether the wounds were inflicted by someone who lacked control. No expert testimony regarding the nature or manifestations of EMED, including the concept of

overkill, was presented. As the prosecutor's comment regarding overkill cannot be reasonably inferred from testimony presented at trial and misstates the law on EMED, it constitutes misconduct.

Because no curative instruction was requested or given, the question then becomes whether the prosecutor's statement was harmless beyond a reasonable doubt. Maluia, 107 Hawai'i at 26, 134 P.3d at 980. The harmless beyond a reasonable doubt standard "requires an examination of the record and a determination of whether there is a reasonable possibility that the error complained of might have contributed to the conviction." State v. Rogan, 91 Hawai'i 405, 412, 984 P.2d 1231, 1238 (1999) (internal quotation marks and citations omitted).

Prior to closing argument, the jury was instructed on the applicable law in this case, including the law governing the EMED defense. However, while the jury was told "[s]tatements or remarks made by counsel are not evidence. You should consider their arguments to you, but you are not bound by their recollections or interpretations of the evidence[,]" the jury was not told what to do if the attorneys contradicted the law as stated by the court in the instructions.

The prosecutor misstated the law on EMED, making overkill a requirement in stabbing cases where it is not one. As in Espiritu, "[t]he misconstruction of the law and the lack of curative instruction bore directly on [Condon's] EMED defense." 117 Hawai'i at 144, 176 P.3d at 902. When an EMED defense is before the court, "the relevant inquiry is whether defendant was under the influence of an EMED at the time of the alleged crime and whether there was a reasonable explanation, viewed from defendant's standpoint, for the disturbance." State v. Aganon, 97 Hawai'i 299, 304, 36 P.3d 1269, 1274 (2001) (quoting State v. Moore, 82 Hawai'i 202, 210, 921 P.2d 122, 130 (1996)) (internal quotation marks, emphasis, and brackets omitted). Condon's state of mind is a fact that must be determined by the trier of fact, based on the direct and circumstantial evidence adduced at trial.

Van Dyke, 101 Hawai'i at 387, 69 P.3d at 98 (quoting State v. Holbron, 78 Hawai'i 422, 425, 895 P.2d 173, 176 (App. 1995)).

According to Condon, he picked Decedent up at a woman's house at 4:30 a.m. the morning of the killing, drove Decedent to the apartment where Decedent was staying, and Decedent told him to go sleep in the bedroom. Condon said when he woke up he "didn't know what was going on, there was all this pressure, I was like smashed." Condon continued:

> I couldn't move or anything and I couldn't breathe. And I just heard somebody's voice right in my ear and it was [Decedent] and he told me don't fucking move, don't' fucking move, I'm going to kill you if you move, don't fight. Because I was trying to fight and I couldn't, I couldn't move or anything. He told me don't fucking move, I said okay, okay, what's going on. And he didn't say nothing. I felt this sharp blade at my side, I didn't know what it was. I just stopped moving, I didn't know what to do and I was being smashed and I couldn't breathe.
>
> . . . .
>
> I felt this sharp thing at my side and then he started fumbling at my boxer shorts and just pulled them off. I said what the fuck is going on. And I couldn't move, he's too big. And I felt -- I felt his penis against my back side and I started fighting, I was turning left and right and I was trying to get him off of me. And I saw this thing over here, it was a hatchet, and I started swinging it back and forth and he finally let me go.
>
> . . . .
>
> I was swinging wildly like left and right and up and down, I was just trying to get him off of me.

Condon said when he broke free, Decedent hit him from behind, causing him fall into the kitchen counter. Condon said he then grabbed a knife, pointed at Decedent, and told him to back off. When defense counsel asked Condon what he was feeling at that moment, Condon answered, "I was scared, I was in panic mode. I was -- I didn't know how to feel or what to feel. I don't know if I was feeling, I just reacted, that's -- that's all I did. I just wanted to get away."

Condon said Decedent grabbed him and put him a headlock. "I don't know exactly when or what happened," Condon testified, "But I know he was squeezing my head and had me in a hold, I couldn't breathe like my head was about to explode. And

I was just -- I started swinging the knife at him to get him off me, to get him to let me go." Condon said that at the apartment's front door, he swung the knife at Decedent again, Decedent let him go, and Condon opened the door and ran out. Condon said he went back into the house, dropped the knife in the toilet, grabbed his car keys, and drove away because he was "freaking out," "confused," "lost," and "panicking."

Condon's testimony is the only evidence as to his state of mind at the relevant time -- during the stabbing. There is a reasonable possibility that jurors could have concluded that the absence of "overkill" precluded them from returning a verdict finding Condon guilty of EMED manslaughter. See Rogan, 91 Hawai'i at 412, 984 P.2d at 1238 (plain error found where there is a reasonable possibility the misconduct contributed to the conviction). Consequently, the prosecutor's erroneous statement could have contributed to Condon's conviction, and therefore, was not harmless beyond a reasonable doubt. Condon, however, does not argue that a retrial is impermissible, nor do we find the prosecutor's misconduct so egregious as to bar reprosecution. Rogan, 91 Hawai'i at 423, 984 P.2d at 1249.

Based on the foregoing, the February 2, 2009 judgment of the Circuit Court of the First Circuit is vacated and remanded for a new trial.

DATED: Honolulu, Hawai'i, June 29, 2010.

On the briefs:

Phyllis J. Hironaka,
Deputy Public Defender,
for Defendant-Appellant.

James M. Anderson,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

8