COMMONWEALTH *vs.* MANUEL MATOS. No. 93-P-1449. June 3, 1994. *Practice, Criminal*, Required finding, Presumptions and burden of proof, Instructions to jury. *Homicide. Malice. Proximate Cause. Evidence*, Ad-

missions and confessions. *Constitutional Law*, Admissions and confessions, Waiver of constitutional rights. *Waiver.*

Manuel Matos appeals from his conviction of murder in the second degree. G. L. c. 265, § 1. We affirm.

We deal first with an issue collateral to the trial of the defendant. On the morning of December 15, 1991, an anonymous telephone caller informed the Brockton police that there had been a "shootout" at 14 Curve Street, Brockton (Matos's address).[1] The victim's body was found in Matos's locked apartment. Matos was arrested in Boston on December 17, 1991, and charged with kidnapping and murder of Ruben Carillo Aumada.[2] On February 21, 1992, he appeared in Brockton District Court with counsel and waived his right to a probable cause hearing, whereupon the court ordered the defendant bound over to the Plymouth County grand jury. That body did not return an indictment until May 11, 1992. During that period, Matos was detained in the county jail. Before return of the indictment, on May 6, 1992, Matos filed a motion in Superior Court for an order discharging him from custody pursuant to G. L. c. 277, § 15. On May 7, a judge of that court allowed the motion but stayed the order discharging Matos pending appellate review. On May 11, the same day the indictment was returned, a single justice of the Supreme Judicial Court denied petitions by the Commonwealth and Matos pursuant to G. L. c. 211, § 3, objecting, respectively, to the order of discharge and the stay. Matos argues that the Superior Court judge erred in staying her May 7, 1992, order and that he was illegally detained during the four-day period between the entry of the order and the issuance of the indictment. Whatever might be the merits of that position (a point on which we intimate no view), the issue is surely moot due to the issuance of the indictment and Matos's subsequent conviction. He has, of course, been credited as time served with the four days between the allowance of the motion that he be discharged from custody and the date on which he was indicted.

Matos also appeals from: (a) the denial of his motion for a required finding of not guilty; (b) the jury instructions on proximate cause; (c) the jury having been instructed on the elements of involuntary manslaughter over his objection; (d) the denial of his request that the Commonwealth be required to refer to him as "the accused" rather than "the defendant" during trial; and (e) the denial of his pretrial motions to suppress inculpatory statements.

1. *The motion for a required finding of not guilty.* Matos offered as a theory of defense that the shooting was either a suicide or, alternatively, an accident and argues that the Commonwealth, at the conclusion of its case, had failed to present evidence that would support a finding that

---

[1] The caller was later identified as Maribel Serrano, Matos's girlfriend. She claimed to have slept through the shooting.

[2] The kidnapping charge was not pursued.

Matos had acted with malice aforethought. Malice may be established by "(i) proof of an actual intent to kill the victim, (ii) proof of an actual intent to do the victim grievous bodily harm, or (iii) proof of an act which a reasonably prudent person would know" that according to common experience there was a plain and strong likelihood that death would follow the contemplated act. *Commonwealth* v. *Young*, 35 Mass. App. Ct. 427, 433 (1993), and cases cited. See also *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987); *Commonwealth* v. *Moore*, 408 Mass. 117, 134 n.9 (1990); *Commonwealth* v. *Ferreira*, 417 Mass. 592, 597-598 & n.7 (1994). The last proof of malice may be established by showing that the defendant intentionally used a deadly weapon, because a reasonably prudent person would have known that death was a plain and strong likelihood following that act. *Commonwealth* v. *Young*, 35 Mass. App. Ct. at 433. If, as here, the issue of accident is fairly raised, the Commonwealth has the burden of proving beyond a reasonable doubt that the shooting was not an accident. *Lannon* v. *Commonwealth*, 379 Mass. 786, 790 (1980). "[I]n sustaining [this] burden of proof . . . the Commonwealth is aided by a permissible inference of malice from the intentional use of a deadly weapon." *Id.* at 790 n.4.

There was evidence that a witness, Llubere Rodriguez, observed a pistol on Matos's person the evening of December 14. The same witness testified that on the morning of December 15 he was awakened by the sound of a gunshot, and, when he went into the next room, he saw Matos holding a pistol that looked like the same one the witness had seen the night before. Matos was standing two to three feet away from the victim, who was lying on the floor with a bullet wound in his head. The Commonwealth's forensic pathologist testified that the wound was not self-inflicted. The manner of death was homicide — the range of fire was "distant," i.e., the shot was fired from a distance "greater than two to three feet" from the victim's head. A ballistics expert testified that his tests of the pistol recovered by the police from 41 Clinton Street, Brockton,[3] had revealed that the pistol required more than a light amount of pressure to fire and that the safety was functional. Even with the safety off, the pistol would not accidentally discharge when struck. Although the expert could not state positively that the bullet removed from the victim's brain had been fired from the pistol that the police recovered, due to damage to the bullet, he did testify with certainty that the two cartridge casings found on the floor near the victim were fired from the pistol.[4] Taken together, the foregoing evidence was

---

[3]The Clinton Street address was the sometime residence of another occupant of the Curve Street apartment, Daniel Gonzales. There was evidence that Matos had gone to that address after the victim's death.

[4]There was additional evidence connecting Matos with the crime. After his arrest, at the request of the police, Matos led them to a pistol, which was partially buried in leaves and dirt in a gully behind the building at 41 Clinton Street, Brockton. When questioned by the police, Matos offered conflicting stories regarding the man-

sufficient to warrant a rational jury's finding that Matos intentionally shot the victim. *Commonwealth v. Campbell*, 375 Mass. 308, 312 (1978). *Commonwealth v. Lowe*, 391 Mass. 97, 107-108, cert. denied, 469 U.S. 840 (1984). From this, the jury could infer malice. *Commonwealth v. Begin*, 394 Mass. 192, 197 (1985). Matos's motion for a required finding of not guilty was rightly denied.

2. *Jury instructions on proximate cause.* The trial judge instructed the jury twice on the issue of proximate cause — once while defining an unlawful killing in the context of first and second degree murder,[5] and again after Matos's counsel requested a second proximate cause instruction on the charge of involuntary manslaughter. While defining involuntary manslaughter, the judge had reminded the jury that his earlier instruction defining an unlawful killing applied. The second causation instruction stated that "the death must be proximately caused by the act or omission of the defendant that otherwise constitutes wanton and reckless conduct. There must be a causal connection that, but for the act or omission, the death would not have occurred." Counsel objected to the second instruction after it was given because it did not state that proximate cause is "substantial cause."

"Jury instructions must be construed as a whole to prevent isolated misstatements or omissions from constituting reversible error." *Commonwealth v. Owens*, 414 Mass. 595, 607 (1993). See also *Commonwealth v. Campbell*, 378 Mass. 680, 706 (1979). The proximate cause instructions, taken together, comport with the language required by *Commonwealth v. Rhoades*, 379 Mass. 810, 823-825 (1980), and *Commonwealth v. Askew*, 404 Mass. 532, 533-534 (1989), even though the judge used the words "but for" instead of "without which." There was no error. The case law does not require an instruction that the jury must find that the defendant's act was a "substantial cause" of the victim's death. As the judge observed, such an instruction might tend to harm rather than help the defendant.

3. *Involuntary manslaughter.* Matos argues that it was error to instruct the jury on the elements of involuntary manslaughter after he specifically objected to such an instruction. The trial judge, adverting to *Commonwealth v. Martinez*, 393 Mass. 612, 613 (1985), observed that a rational

---

ner of the victim's death and Matos's whereabouts when the shot was fired. While evidence of consciousness of guilt (e.g., flight, making false statements to the police, hiding the murder weapon) is always relevant to the issue of whether a criminal homicide was committed, it has been regarded as evidence "ordinarily" not competent to establish malice aforethought. *Commonwealth v. Lowe*, 391 Mass. 97, 108 n.6, cert. denied, 469 U.S. 840 (1984). *Commonwealth v. Cohen*, 412 Mass. 375, 392 (1992). Cf. *Commonwealth v. Nadworny*, 396 Mass. 342, 358 (1985), cert. denied, 477 U.S. 904 (1986) (malice may be inferred from the defendant's disposal of evidence).

[5]The first instruction defined an act that is the proximate cause of death as "an act which, in a natural and continuous sequence, produces the death and without which the death would not have occurred."

view of the evidence permitted a finding of involuntary manslaughter,[6] and thus he was required to instruct the jury on manslaughter. *Martinez* is somewhat inapposite because in that case the defendant had requested an instruction on the lesser included offense. Even though a judge has no *duty* to undercut a defendant's "all-or-nothing" strategy, *Commonwealth v. Pagan*, 35 Mass. App. Ct. 788, 792 (1994) (no duty to give manslaughter instruction when defendant declined to request one and denied any involvement with the crime), cases subsequent to *Martinez* have held that, even if a defendant objects to the giving of an instruction on a lesser included offense, there is no error in giving such an instruction if the evidence warrants it. *Commonwealth v. Pizzotti*, 27 Mass. App. Ct. 376, 384-385 (1989) ("A judge need not fall in with a defendant's desire to gamble on the jury's acquitting him of the larger crime if that crime were put to them without the other choice"). *Commonwealth v. Thayer*, 35 Mass. App. Ct. 599, 603 n.9 (1993), further app. rev. granted, 416 Mass. 1111 (1994) ("If a charge on a lesser included offense is appropriate, the defendant cannot insist that the instruction not be given"). The cases that have noted that defendants, for tactical reasons, might prefer to forgo instructions on lesser included offenses have involved defendants' failure to request or to object to the omission of a charge on the lesser offense. See *Commonwealth v. Yunggebauer*, 23 Mass. App. Ct. 46, 50-51, 52 n.4 (1986); *Commonwealth v. Carver*, 33 Mass. App. Ct. 378, 387 (1992). Matos's contention that a defendant has an absolute right to make tactical decisions that determine which theories of criminal liability are submitted to the jury is erroneous. Matos's invitation to us to presume prejudice from those instructions, we may add, is also without merit. Matos was convicted of second degree murder, not manslaughter.

4. *Request to be referred to as "the accused."* Matos cites no authority in support of his argument challenging the denial of his motion to be referred to as "the accused" at trial. None appears to exist. Even when the identification of the defendant as the perpetrator of the crime is the critical issue, referring to him as "the defendant" is not improper. *Commonwealth v. Brown*, 414 Mass. 123, 125-126 (1993). The trial judge gave preliminary instructions that the jury were not to draw any adverse inference from the fact that Matos was referred to as the defendant and did so again at the end of trial. Jurors are presumed to follow the trial judge's instructions. *Commonwealth v. Cameron*, 385 Mass. 660, 668 (1982). *Commonwealth v. Pope*, 406 Mass. 581, 588 (1990).

5. *Denial of motion to suppress inculpatory statements.* In connection with the motion of Matos to suppress certain pretrial statements, we accept the motion judge's subsidiary findings of fact absent clear error, *Com-*

---

[6]If the jury had believed portions of Matos's statements to the police, they could have inferred that Matos gave his loaded pistol to the very drunk victim, who shot himself with it.

*monwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), and give substantial deference to his ultimate findings. *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 538 (1990). Even if it were established at the motion hearing that Matos suffered from a diminished mental capacity (and it was not),[7] the totality of circumstances leading to his waiver of his Miranda rights amply supports the ultimate finding that the waiver was knowing and intelligent. The warnings were read to Matos three times, in Spanish. He indicated each time that he understood those rights. The second time the warnings were read, the Spanish-speaking officer explained what each warning meant after he read it aloud. See *Commonwealth* v. *Cameron*, 385 Mass. 660, 664-665 (1982); *Commonwealth* v. *Medeiros*, 395 Mass. 336, 347 (1985). The motion judge specifically found that Matos was not subjected to any "threats, intimidation, coercion or any type of improper interrogation." That finding is well supported by the record. There was no error.

*Judgment affirmed.*

*Oliver C. Mitchell, Jr.*, for the defendant.
*John E. Bradley*, Assistant District Attorney, for the Commonwealth.

---

[7]The evidence at the suppression hearing established that, at the time of his examination at Bridgewater State Hospital, Matos was not mentally retarded or suffering from any mental disease or personality disturbance. In fact, there was evidence that Matos had no communication problems and was possessed of normal intellectual functions.