16 P.3d 246

STATE of Hawai'i, Respondent–Appellee,

v.

Oliver HAANIO, Jr., Petitioner–Appellant.

No. 21720.

Supreme Court of Hawai'i.

Jan. 31, 2001.

Dwight C.H. Lum, on the application, Honolulu, for petitioner-appellant.

MOON, C.J., NAKAYAMA, RAMIL, and ACOBA, JJ.; with LEVINSON, J., concurring separately.

Opinion of the Court by ACOBA, J.

We affirm the affirmance by the Intermediate Court of Appeals (the ICA) of the June 19, 1998 judgment of conviction and sentence of Petitioner–Appellant Oliver Haanio, Jr. (Petitioner) for the included offense of robbery in the second degree, Hawai‘i Revised Statutes (HRS) § 708–841 (1993). However, we disagree with the ICA's reformulation of the standard established in *State v. Kupau*, 76 Hawai‘i 387, 879 P.2d 492 (1994), for governing a trial court's discretion in giving included offense instructions. For that reason, and to clarify other grounds for affirming Petitioner's conviction, we granted certiorari herein. We further hold, upon reexamination of the *Kupau* decision, that, in jury trials beginning after the filing date of this opinion, the trial courts shall instruct juries as to any included offenses having a rational basis in the evidence without regard to whether the prosecution requests, or the defense objects to, such an instruction.[1]

I.

On April 23, 1997, Petitioner was charged by way of complaint with one count of robbery in the first degree, HRS § 708–840(1)(a) (1993),[2] of Gilbert Kamoku. The complaint alleged in relevant part that "[o]n or about the 12th day of April, 1997, ... [Petitioner,] while in the course of committing a theft, did attempt to kill or intentionally inflict or attempt to inflict serious bodily injury upon [Kamoku.]"

On January 20, 1998, the case proceeded to trial. Humphrey Goods testified that, at about 10:00 p.m. on April 12, 1997, while he and Robert Morris were sitting on a wall on River Street in Honolulu, he saw Petitioner approach Kamoku and hit him, causing Kamoku to fall to the ground. Once Kamoku was on the ground, Petitioner was observed kicking him several times. Approximately twenty minutes later, Goods approached Kamoku after being told that "something must be wrong."

---

1. Because the change as to the *Kupau* included offense rule is not applied to the instant case on appeal or any other case in which trial has been completed, our unwillingness to apply this requirement retroactively is not inconsistent with federal doctrine, which holds that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on review, or not yet final. *See Tachibana v. State*, 79 Hawai‘i 226, 238 n. 10, 900 P.2d 1293, 1305 n. 10 (1995) (citing *Powell v. Nevada*, 511 U.S. 79, 84, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994)); and *Griffith v. Kentucky*, 479 U.S. 314, 322–28, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Application of the rule we adopt concerning included offenses would not involve selective application to similarly situated defendants; thus, such application does not violate the reasoning of *Powell* and *Griffith*. *See State v. Kekona*, 77 Hawai‘i 403, 411 n. 3, 886 P.2d 740, 748 n. 3 (1994) (Levinson, J. concurring and dissenting).

2. HRS § 708–840(1)(a) provides in pertinent part that "[a] person commits the offense of robbery in the first degree if, in the course of committing theft ... [t]he person attempts to kill another, or intentionally or knowingly inflicts or attempts to inflict serious bodily injury upon another[.]"

Morris testified he was sitting with Goods earlier when Petitioner challenged him to a fight and chased him around a car. Petitioner appeared intoxicated. Morris saw Petitioner walk down the street towards Kamoku, and ten minutes later Morris turned around and saw Kamoku lying on the ground and Petitioner walking away with a "friend." Petitioner approached Morris and again challenged him to a fight.

Charlotte Hammons testified that she observed, from fifty feet away, Petitioner "drinking" with Kamoku. She saw Kamoku give Petitioner some money, which Petitioner used to purchase beer at a nearby store. According to Hammons, Petitioner and Kamoku continued drinking until Petitioner stood up and requested more money from Kamoku. Hammons recalled that, at that moment, Petitioner choked Kamoku. When Petitioner released Kamoku, Kamoku fell to the ground. Petitioner yelled at Kamoku and kicked him. After Petitioner walked away from Kamoku, Hammons related that she and her boyfriend, Nick, approached Kamoku and found him lying on the sidewalk surrounded by blood. Goods observed that Kamoku's right pants pocket was turned inside out. Nick then called an ambulance.

An ambulance technician found Kamoku lying face down on the River Street sidewalk, with blood around his head and flowing from his nose and mouth. Kamoku arrived at the Queen's Medical Center comatose, barely breathing, and with bruises on his face, forehead, and around his eyes. The examining physician concluded that Kamoku had sustained a severe concussion.

Kamoku testified that he remembered something happening to him on April 12, 1997, but could not recall specifically what occurred. He only recollected "drinking," waking in the hospital, and being informed by a doctor that he had sustained a concussion. Kamoku did recount that he had money in his right front pocket on the day in question. He could not recall how much money he had, but remembered that he also had a wallet, food stamps, an identification card, and a bus pass, all of which were never recovered.

A police officer testified that Kamoku's bus pass was found by emergency "personnel" and provided to the officer when he was attempting to identify Kamoku at the scene of the crime.

At the close of the case-in-chief of Respondent–Appellee State of Hawai'i (the prosecution), the defense rested without presenting any evidence. Petitioner then moved for a judgment of acquittal, which the court denied.[3] Thereafter, the court presented the parties with proposed supplemental jury instructions regarding included offenses:

> THE COURT: Now, I got some additional instructions I want you folks to take a look at over the weekend, included offenses.
>
> I am not saying that I feel there's a rational basis to give them, but I wanted to give them to you both to think about over the weekend. . . .

At the conference held to settle instructions, the defense objected to the court's proposed supplemental jury instruction no. 5[4] on the

**3.** The court ruled as follows:

> THE COURT: All right. I think that the [prosecution] has produced enough evidence to establish a prima facie case. And that the evidence viewed in the light most favorable to the [prosecution] would allow a reasonable mind to fairly conclude guilt beyond a reasonable doubt as to the offense charged. So I'll deny the motion.

**4.** The court's proposed supplemental instruction no. 5 stated as follows:

> If and only if you find [Petitioner] not guilty of the offense of Robbery in the First Degree or you are unable to reach a unanimous verdict as to that offense, then you must determine whether [Petitioner] is guilty or not of the included offense of Robbery in the Second Degree.
>
> A person commits the offense of Robbery in the Second Degree if, in the course of committing theft, he [or she] recklessly inflicts serious bodily injury upon another.
>
> There are two material elements of the offense of Robbery in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.
>
> These two elements are:
>
> 1. That [Petitioner] was in the course of committing theft; and
>
> 2. That, while doing so, [Petitioner] recklessly inflicted serious bodily injury on [Kamoku].

included offense of robbery in the second degree, as defined in HRS § 708–841(1)(c).[5]

THE COURT: ... Court's supplemental 5 will be given over objection of [Petitioner]. [Defense Counsel].

[DEFENSE COUNSEL]: Yes. If the [c]ourt pleases, based on [Petitioner's] position of denial as to any type of action against the victim we would object on the grounds that this isn't consistent with the position taken by [Petitioner]. Also with the facts as brought out in testimony and evidence.

THE COURT: I will find a rational basis in the evidence for the jury to find that rather than intending to kill or attempting to kill or to inflict serious bodily injury[,] that [Petitioner] may have acted recklessly in inflicting the injuries he did on the victim. So No. 5 will be given over objection.

The prosecution had submitted a proposed included offense instruction on robbery in the second degree, State's supplemental instruction no. 1, but withdrew it at the settlement conference.

The court's supplemental instructions no. 6, regarding the purported included offense of assault in the first degree, as defined in HRS § 707–710(1),[6] and no. 7A, dealing with the included offense of assault in the second degree,[7] as defined in HRS § 707–711(1)(a) and (b),[8] were also given over Petitioner's objections.[9]

**5.** HRS § 708–841(1)(c) states that "[a] person commits the offense of robbery in the second degree if, in the course of committing theft ... [t]he person recklessly inflicts serious bodily injury upon another."

**6.** HRS § 707–710(1) states that "[a] person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person."

**7.** THE COURT: All right. Again, I think there is a substantial basis in the evidence for the jury to acquit of the charged offense and convict of the included offense of assault in the second degree. Either because they find that [Petitioner] intentionally or knowingly caused substantial bodily injury or that he recklessly caused serious bodily injury. So 7A will be given over objection.

**8.** HRS § 707–711(1)(a) and (b) state as follows:

The court subsequently conducted a colloquy with Petitioner, wherein it informed him of the included offenses and advised him that these offenses carried lesser penalties than the charged offense. Petitioner indicated he objected to the jury being instructed on lesser included offenses.

[THE COURT] Q: [Petitioner], we are having this brief matter without the jury because I want to tell you that you are entitled to have certain lesser included offenses considered in this case by the jury. Assault in the first degree, assault in the second degree. Do you understand?

[PETITIONER] A: Yes.

Q. The offense you are charged with now carries a maximum twenty years in prison. If convicted of that offense[,] I have no choice but to send you to prison. Do you understand?

A. (Nods)

Q. As to included offenses, robbery in the second degree and assault in the first degree are Class B felonies and both carry a maximum penalty of ten years in prison and $25,000 fine. But they also carry the option of me giving you probation. Do you understand that?

A. (Nods)

Q. You need to answer out loud.

A. Yes, yes.

(1) A person commits the offense of assault in the second degree if:
(a) The person intentionally or knowingly causes substantial bodily injury to another;
(b) The person recklessly causes serious bodily injury to another person[.]

**9.** THE COURT: ... No. 6 will also be given over objection of [Petitioner]. [Defense counsel].

[DEFENSE COUNSEL]: The same reason given for supplemental 5.
THE COURT: Thank you. I will find here that there is a rational basis in the evidence for the jury to acquit on the ground that there was no theft involved. But just an assault. So No. 6 will be given, as well.
* * * *
THE COURT: 7A will be given. 7A will be given over objection of [Petitioner]. [Defense counsel].
[DEFENSE COUNSEL]: Same reason as that stated for supplemental instruction 5.

Q. So that if I were to instruct the jury on the lesser included offenses of assault in the first degree and robbery in the second degree, the jury would have the option of finding you guilty of an included offense that you could get probation on. Do you understand that?

A. Yes, I do.

Q. There is one other offense that I find the evidence justifies me instructing the jury on. That is assault in the second degree. That is a class C felony. The maximum penalty is five years in prison and $10,000 fine. That one I can also give you probation on. Do you understand?

A. Yes, I do.

Q. During the time that we were settling instructions we were informed that you did not want to have any lesser included offenses in this case?

A. No, I don't.

Q. That is your position?

A. Yes, it is.

Q. So if I were to find that in addition to the three charges that I have already mentioned, robbery in the second degree, assault in the first degree, and assault in the second degree, if I were to say that the evidence justified me instructing the jury as to a theft in the second degree and assault in the third degree, one of which is a class C felony—the theft in the second degree is a class C felony, which is a five year felony; and assault in the third degree, which is a misdemeanor—you would still not want those included offense instructions?

A. No.

THE COURT: Thank you very much.

Nevertheless, the court gave its supplemental jury instructions nos. 5, 6, and 7A. After deliberations, the jury found Petitioner guilty of the included offense of robbery in the second degree. The court sentenced Petitioner to ten years' imprisonment, as set forth in its June 19, 1998 judgment of conviction and sentence.

## II.

On appeal, which was assigned to the ICA, Petitioner argued for reversal of his conviction on the grounds that: (1) the court erred in denying his oral motion for judgment of acquittal for lack of substantial evidence that Petitioner acted in the course of committing theft; (2) the jury was improperly instructed on the offenses of assault in the first degree and assault in the second degree, because these offenses are not included in the offense of robbery in the first degree; and (3) the court erred in instructing the jury on the offense of robbery in the second degree because (a) "[i]f the [prosecution's] witnesses were to be believed, then [his] action could only be considered 'intentional,' [as required on a charge of robbery in the first degree and] not 'reckless[,]' " as required on a charge of robbery in the second degree; and (b) giving the second degree robbery instruction over his objection and in the absence of the prosecution's request violated one of the *Kupau* precepts.

The ICA, in a memorandum opinion filed on July 28, 2000, affirmed the court's judgment convicting Petitioner of the included offense of robbery in the second degree. *State v. Haanio*, No. 21720, mem. op. at 24 (Haw.Ct.App. July 28, 2000) [hereinafter "ICA's opinion"]. Regarding Petitioner's contention that there was a lack of substantial evidence that he had committed theft, the ICA held that the court did not err in denying Petitioner's motion for judgment of acquittal because there was evidence that Petitioner was in the "course of committing theft," as defined in HRS § 708–842 (1993). ICA's opinion at 11–12.

With respect to Petitioner's second contention, the ICA held that, "to the extent that the evidence shows that serious bodily injury was in fact inflicted, it appears Assault First and Assault Second are lesser included offenses of" first degree robbery, but "[t]o the extent ... serious bodily injury was in fact only attempted, Assault First and Assault Second are not included offenses" of first degree robbery. The ICA also held that "[c]learly Assault First and Assault Second are not included offenses of Robbery Second." Id. at 15. In any event, the ICA concluded that these instructions were harmless beyond a reasonable doubt because the

jury did not reach the issues of assault in the first or second degree.[10]   ICA's opinion at 17.

As to Petitioner's last argument, the ICA disagreed with Petitioner's position as to part (a)[11] and held that, as to part (b), the court did not abuse its discretion in instructing on the included offenses.   ICA's opinion at 23.

In connection with part (b), the ICA explained that *Kupau* requires the court to enter into a colloquy with the defendant to ensure that the defendant "understands the effect and potential consequences of waiving the right to have the jury instructed regarding included offenses."   ICA's opinion at 20 (citing *Kupau,* 76 Hawai'i at 393–96 & n. 13, 879 P.2d at 498–501 & n. 13).   In interpreting *Kupau,* the ICA held that the defendant's degree of understanding must be "at least 50.1" on a "scale of 1 to 100....":

> In other words, understanding comes in degrees and the trial judge must determine the degree of the defendant's understanding.   On a scale of 1 to 100, the defendant's understanding could be anywhere from 50.1 to 100.   The *Kupau* rule requires that the defendant's understanding be at least 50.1.   As long as the defendant's understanding is at least 50.1, the court has no duty to increase that understanding.

*Id.* at 20.   The ICA confirmed that "there was such a colloquy and the record shows that [Petitioner] clearly and fully understood the effect and potential consequences of waiving his right to have the jury instructed regarding the included offense[s]." *Id.* at 21. The ICA also appeared to conclude that the weight of the evidence supported the issuance of the included offense instruction regarding robbery in the second degree.   It proposed that such discretion inhered in the

trial court when the evidence weighed "51–49 or more in favor" of the giving of such an included offense instruction:

> [T]he trial court has the discretion to give the included offense instruction when the "weight" of the evidence is 51–49 or more in favor of the included offense.   The Hawai'i Supreme Court's *Kupau* opinion did not indicate whether the trial judge has discretion when the "weight" of the evidence is 50–50 or 51–49 or more in favor of the charged offense.

*Id.* at 22–23 (footnote omitted).

## III.

On August 28, 2000, Petitioner filed an application for a writ of certiorari, requesting this court to grant his application and to reverse the June 19, 1998 judgment of conviction and sentence.   In his application, Petitioner essentially argues that the ICA erred in ruling that (1) the court did not abuse its discretion in instructing the jury on the lesser included offense of robbery in the second degree when such instruction was not requested by the prosecution and was objected to by the defense and (2) there was sufficient evidence that Petitioner was in the course of committing theft.

## IV.

■   In Petitioner's first argument, he contends that the ICA misinterprets *Kupau* because *Kupau* does not support the position that "the trial judge is free to ignore the defendant's own wishes and trial strategy[; rather,] *Kupau* stands for the proposition that, the more the defendant appears to understand the risks, the greater it weighs directly against giving the included offense instruction."[12]   Thus, according to Petition-

---

10.   This issue is not raised in the certiorari petition; therefore, we do not decide it and render no opinion as to the .correctness of the ICA determination.

11.   In apparently rejecting contention (2), the ICA said that "[t]he question is not whether [Petitioner] acted intentionally or recklessly when he injured Kamoku.   The question is whether [Petitioner] acted intentionally or recklessly when he 'inflicted serious bodily injury' upon Kamoku.   It is one thing to intend injury.   It is another to intend 'serious' injury."   ICA's opinion at 18.

Petitioner states in his application that "the ICA never explains how the evidence favored a reckless state of mind instead of intentional [sic]."

12.   Petitioner further asserts, without much more elucidation, that, as a matter of "fundamental fairness," "[t]he trial court [should have] inform[ed] the defense that it was *sua sponte* giving its own included offense instruction [before] the defense rested."   *Kupau* instructed that "[t]he trial judge must bring all included offense instructions that are supported by the evidence to the attention of the parties."   76 Hawai'i at 395,

er, "*Kupau* should not be read to give the trial court ... discretion" and, under the ICA's interpretation of *Kupau*, "the trial court has sole discretion to give a *sua sponte* included offense instruction even if the evidence is 50–50 evenly stacked either way." In conclusion, Petitioner asserts that the judgment should be reversed and a judgment of acquittal entered because "there was no showing that the weight of the evidence favored giving the instruction on Robbery in the Second Degree over Robbery in the First Degree."

### A.

In *Kupau*, this court held that, in the situation where "(1) the prosecution does not request that included [offense] instructions be given and (2) the defendant specifically objects to the included offense instructions for tactical reasons," 76 Hawai'i at 395, 879 P.2d at 500, the "trial court must then exercise his or her discretion as to whether the included instructions should be given." *Id.* at 396, 879 P.2d at 501. In demarcating the scope of such discretion, it was said that "[t]he trial judge's discretion should be guided by the nature of the evidence presented during the trial, as well as the extent to which the defendant appears to understand the risks involved." *Id.* (footnote omitted).

Under *Kupau*, the extent of the defendant's understanding was to be garnered from "a colloquy [by the trial judge], on the record, directly with the defendant to insure that the defendant" understood "the effect and potential consequences of waiving" the included offense instruction. *Id.* at 395–96 n. 13, 879 P.2d at 500–01 n. 13. In a gloss on *Kupau*, as recounted *supra*, the ICA indicated that the defendant's understanding must be measured on a scale of 1 to 100 and that an understanding of "at least 50.1" sufficed to satisfy this requirement of *Kupau*. ICA's opinion at 20. Petitioner takes issue with

this interpretation, contending that "*Kupau* stands for the proposition that, the more the defendant appears to understand the risks, the greater it weighs directly against giving the included offense instruction." Pointing out that the ICA itself found that the colloquy demonstrated "[Petitioner] clearly and fully understood the effect and potential consequences of waiving his right to have the jury instructed regarding the included offense," *id.* at 21, he suggests that "reversible error [occurs] ... when [the trial court] fail[s] to abide by the defendant's decision."

### B.

*Kupau* did not establish scaled degrees of understanding, nor did it instruct, as the ICA suggests, that once some midway point of the defendant's understanding was ascertained, "the court had no duty to increase that understanding." ICA's opinion at 20. We cannot agree that adopting a scale of 1–100 to rate a defendant's understanding of his or her rights lends more precision to the trial judge's conduct of the colloquy, or to the appellate court's review of the trial court's discretion, than that already existing under the abuse of discretion standard.[13] With due respect to the ICA, we believe the certainty and uniformity that the ICA's rating scheme seeks is illusory, because the assessment of "degrees" itself may become the subject of substantial dispute among the parties and the trial court, and, on appeal, the trial court's "rating" would still be subject to review for abuse.

The discretion exercised by the trial court in ascertaining a defendant's understanding and the nature of the evidence, *see* discussion *infra*, is qualitative, inhering in the trial court's in-court assessment of the defendant and the evidence. Such discretion is not "unlimited," as asserted in the ICA's opinion

879 P.2d at 500. The court did this. There was no unfairness about its procedure inasmuch as the court could not have determined what instructions should be given until the close of evidence. Moreover, the court's duty was properly to instruct the jury. Finally, we see no prejudice to Petitioner since the prosecution apparently had proposed a second degree robbery instruction that it subsequently withdrew.

13. Although *Kupau* does not expressly establish the standard for reviewing a trial court's assessment of the extent to which a defendant understands the waiver, the applicable reviewing standard would be abuse of discretion since absent a defect in the nature of the questions asked, we must rely on the court's assessment of a defendant's demeanor in responding to the court's questions.

at 23 n. 14, because its exercise is still subject to review for abuse, giving appropriate deference to the trial court's assessment of the defendant's responses and the evidence, and due regard to the specific circumstances of each case.

## V.

*Kupau* did not explicate "the nature of the evidence presented during trial," but, in a footnote, the trial courts were instructed that they were "justified" in giving an included offense instruction if "the weight of the evidence" supported it, notwithstanding that there was also sufficient evidence to support a verdict of guilt as to the charged offense. 76 Hawai'i at 396 & n. 14, 879 P.2d at 501 & n. 14. In its interpretation of this aspect of *Kupau*, the ICA points out that "[t]he possibilities range anywhere between the weight of the evidence being heavily in favor of the charged offense and heavily in favor of the included offense." ICA's opinion at 22.

Noting that *Kupau* "did not indicate whether the trial judge has discretion [to give an included offense instruction] when the 'weight' of the evidence is 50–50 or 51–49 or more in favor of the charged offense," the ICA summarily concluded, as noted above, that "the trial court has the discretion to give the included offense instruction when the 'weight' of the evidence is 51–49 or more in favor of the included offense." ICA's opinion at 22–23 (footnote omitted). As previously indicated, Petitioner objects to the giving of an included offense instruction "if the evidence is 50–50 evenly stacked either way," and he asserts, alternatively, that the evidence did not weigh more heavily in favor of the included offense instruction. We conclude, for the reasons that follow, that the court did not err in giving the included offense instruction.

## VI.

We must overrule the ICA's formulaic interpretation of the discretionary standards set forth in *Kupau*, and, applying *Kupau*, we conclude that the court correctly followed its precepts.

Petitioner and the ICA seem to agree that the court's colloquy with Petitioner established, as *Kupau* required, that he understood "the effect and potential consequences of waiving the right to" included offense instructions. 76 Hawai'i at 395–96 n. 13, 879 P.2d at 500–01 n. 13. However, Petitioner disputes that, considering "the nature of the evidence presented during the trial," *id.* at 396, 879 P.2d at 501, the court was "justified" in giving the included second degree robbery instruction. As distinguished from the charge, pursuant to HRS § 708–840(1)(a), that Petitioner attempted to kill Kamoku or intentionally inflicted or attempted to inflict serious bodily injury upon him in the course of committing theft, the HRS § 708–841(1)(c) included offense instruction posited that Defendant recklessly inflicted serious bodily injury upon Kamoku. In giving that instruction, the court discerned "a rational basis in the evidence for the jury to find that ... [Petitioner] may have acted recklessly in inflicting the injuries he did." By doing so, the court must have considered "the nature of the evidence presented at trial." *Id.* at 396, 879 P.2d 501. In our view, based on the record before it, the court could find, consonant with *Kupau*, that the "weight of the evidence" supported guilt as to robbery in the second degree, rather than robbery in the first degree. *See infra* discussion Part VIII. Moreover, by definition, the court's consideration of the nature of the evidence was not confined to the "example" recited in footnote 14 of *Kupau*. Hence, the court correctly instructed the jury regarding robbery in the second degree.

## VII.

### A.

While we do not agree with the ICA's interpretation of Kupau's rule on included offense instructions, it provides us with an opportunity to reexamine this aspect of that case. We now hold that trial courts must instruct juries as to any included offenses when "there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense," HRS § 701–109(5) (1993), and, to the extent that *Kupau* stands to the contrary, we overrule it.

In *Kupau*, this court carved out an exception to the rule that the trial court has the ultimate responsibility and duty *properly* to instruct the jury. However, permitting the parties, for their strategic reasons, to cast upon the trial court the burden, at the risk of error, of deciding *not* to give an included instruction when the evidence supports it, may have unduly complicated the trial court's ultimate obligation to promote justice in criminal cases. Steering through "the competing interests of the prosecution and defen[se,] as well as" the trial court's duty properly to instruct in criminal cases, this court discerned a passage through which a trial court was "simply not required to give" an included offense instruction, even though supported by sufficient evidence. *Kupau*, 76 Hawai'i at 395, 879 P.2d at 500.

▮ What was gained by accommodating, in a qualified way, the interest in precluding jurors from "convict[ing a] defendant of an included offense in order to achieve an unjustified compromise," *id.* at 394, 879 P.2d at 499, may be outweighed by the complexity of implementing the two-step *Kupau* process. While the *Kupau* colloquy is accomplished easily enough, divining "the nature" of the trial evidence that should "guide" the court's discretion appears difficult to accomplish, and the example provided in footnote 14 of *Kupau*, *see id.* at 396 n. 14, 879 P.2d at 501 n. 14, arguably enmeshes the trial court in weighing evidence, a function usually assigned to juries. *See State v. Quitog*, 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997) (stating that the supreme court "ha[s] no quarrel with the notion that '[t]he jury is the sole judge of witness credibility and the weight of the evidence' ") (quoting *State v. Estrada*, 69 Haw. 204, 229, 738 P.2d 812, 828 (1987) (citation omitted)); *State v. Kekaualua*, 50 Haw. 130, 132, 433 P.2d 131, 133 (1967) (holding that in a trial by jury, the jury is the sole judge of the credibility of the witnesses).

### B.

More fundamentally, a trial court's determination that an included offense instruction, which is otherwise supported by the evidence, should not be given "*entitle[s* a defendant] to forego an [included offense] instruction for strategic reasons," *Kupau*, 76 Hawai'i at 394, 879 P.2d at 499 (emphasis and brackets in original) (internal quotation marks omitted), and also allows the prosecution to forego included offense instructions "for its own ... tactical or strategic reasons." *Id.* at 395, 879 P.2d at 500. According to authority cited by Petitioner, a defendant should be allowed to waive proposed lesser-included offense instructions and risk conviction of the charged offense for the chance of obtaining an outright acquittal. *See O'Bryan v. State*, 876 P.2d 688, 689 (Okla.1994) (holding that a defendant may "waive the right to a lesser included offense instruction [even] when the evidence warrants such an instruction"); *State v. Douglas*, 485 N.W.2d 619, 623 (Iowa 1992) (holding that a lesser included offense instruction should not be submitted to the jury where the defendant waived it, and the prosecution did not object to the waiver). This "all or nothing" approach is "a strategy that permits parties in a criminal trial to forego instructions on provable lesser-included offenses, thereby forcing the jury to choose between conviction and acquittal on the greater charge." C. Carpenter, *The All–or–Nothing Doctrine in Criminal Cases: Independent Trial Strategy or Gamesmanship Gone Awry?*, 26 Am.J.Crim.L. 257, 258 (1999).

▮ The judicial objectives within the context of the criminal justice system are to assess criminal liability and to determine appropriate punishment if and when warranted. Acceding to an "all or nothing" strategy, albeit in limited circumstances, forecloses the determination of criminal liability where it may in fact exist. Thus, elevating a "winner take all" approach over such a determination is detrimental to the broader interests served by the criminal justice system. We now conclude that the better rule is that trial courts must instruct juries on all lesser included offenses as specified by HRS § 701–109(5), despite any objection by the defense, and even in the absence of a request from the prosecution.

▮ We discern no constitutional or substantial right of a defendant not to have

the jury instructed on lesser included offenses. *See Commonwealth v. Matos,* 36 Mass.App.Ct. 958, 634 N.E.2d 138, 141 (1994) (stating that "the defendant does not have an absolute right to make tactical decisions that determine which theories of criminal liability are submitted to the jury"). Similarly, we can conceive of no right of the prosecution to prevent the jury from considering included offense instructions supported by the evidence. *See People v. Barton,* 12 Cal.4th 186, 47 Cal.Rptr.2d 569, 906 P.2d 531, 536 (1995) (stating that "neither the defendant nor the People have a right to incomplete instructions") (citation omitted)). Rather, in our judicial system, the trial courts, not the parties, have the duty and ultimate responsibility to insure that juries are properly instructed on issues of criminal liability. *See Kupau,* 76 Hawai'i at 395, 879 P.2d at 500. *See also State v. Nakamura,* 65 Haw. 74, 79, 648 P.2d 183, 187 (1982) (noting that trial court's instructions fully apprised jury in easily understandable language of law to be applied); *State v. Feliciano,* 62 Haw. 637, 643, 618 P.2d 306, 310 (1980) ("[I]t is well settled that the trial court must correctly instruct the jury on the law.... This requirement is mandatory to insure the jury has proper guidance in its consideration of the issues before it."). Correlatively, juries are obligated to render true verdicts based on the facts presented; hence, barring their consideration of lesser included offenses supported by the evidence undermines their delegated function. *See State v. Bullard,* 97 N.C.App. 496, 389 S.E.2d 123, 124 (1990) (stating that "a practice that encourages jurors to convict a defendant of a greater offense by not permitting them to consider its lesser elements is unfair and inconsistent with the precept that jurors are at liberty to believe all, none, or part of the evidence as they see fit"). Most significantly, an all or nothing approach impairs the truth seeking function of the judicial system.

Our courts are not gambling halls but forums for the discovery of truth.... A trial court's failure to inform the jury of its option to find the defendant guilty of the lesser offense would impair the jury's truth-ascertainment function. Consequently, neither the prosecution nor the defense should be allowed, based on their trial strategy, to preclude the jury from considering guilt of a lesser offense included in the crime charged. To permit this would force the jury to make an "all or nothing" choice between conviction of the crime charged or complete acquittal, thereby denying the jury the opportunity to decide whether the defendant is guilty of a lesser included offense established by the evidence.

*Barton,* 47 Cal.Rptr.2d 569, 906 P.2d at 536. In sum, the rational resolution of criminal liability issues in the criminal justice system and the proper administration of such issues at the trial judge and jury level require the giving of lesser included offense instructions. We hold, therefore, that trial courts are duty bound to instruct juries "sua sponte ... regarding lesser included offenses," *id.,* at 579, 906 P.2d at 541, having a rational basis in the evidence.[14]

Of course, the prosecution and the defense may, as they do in the ordinary course, propose particular included offense instructions, and our holding is not to be taken as discouraging or precluding their desire or felt obligation to do so. Indeed, the trial court's failure to give appropriate included offense instructions requested by a party constitutes error, as does the trial court's failure to give an appropriate included offense instruction that has not been requested. Such error, however, is harmless when the jury convicts the defendant of the charged offense or of an included offense greater than the included offense erroneously omitted from the instructions. The error is harmless because jurors are presumed to follow the court's instructions, and, under the standard jury instructions,[15] the jury, "in

---

**14.** Because, after the filing date of this decision, courts are required to instruct juries on lesser included offenses having a rational basis in the evidence without regard to the wishes of the prosecution or the defense, the need for the *Kupau* colloquy procedure to determine the defendant's understanding of the consequences of waiving instructions as to such offenses is obviated. Accordingly, it should no longer be conducted.

**15.** Standard jury instructions 5.01 and 5.03, in conjunction, state as follows:

> **5.01 GENERIC ELEMENTS INSTRUCTION**

reaching a unanimous verdict as to the charged offense [or as to the greater included offense, would] not have reached, much less considered," *State v. Holbron,* 80 Hawai'i 27, 47, 904 P.2d 912, 932 (1995) the absent lesser offense on which it should have been instructed. Id. (holding that the trial court's erroneous instruction on the nonexistent included offense of "attempted reckless manslaughter" was "harmless beyond a reasonable doubt" where the jury reached a unanimous guilty verdict as to the charged offense of attempted murder in the second degree). To the extent that *Kupau* held that the failure to give an included offense instruction was plain error even when the defendant was convicted of the charged offense, *see* 76 Hawai'i at 396, 879 P.2d at 501, it conflicts with the rationale of *Holbron,* which we reaffirm here and, in that aspect, can no longer be regarded as controlling.

▆▆▆ In the instant case, with respect to the various included offenses, the trial court instructed the jury that "if and only if" it found the defendant not guilty of the offense designated or was "unable to reach a unanimous verdict as to that offense, then" it must consider the particular included offense at issue.[16] We believe that the imprimatur of the trial court's instructions, as reinforced by counsel in closing argument (if counsel is so

> In Count (*count number**) of the Indictment/Complaint, the Defendant (*defendant's name*) is charged with the offense of (*charge*).
> A person commits the offense of (*charge*) if he/she (*track statutory language*).
> There are (*number*) material elements of the offense of (*charge*), each of which the prosecution must prove beyond a reasonable doubt.
> These (*number*) elements are:
> . . . .
> **5.03 INCLUDED OFFENSE—GENERIC**
> If and only if you find the defendant not guilty of (*charged offense*), or you are unable to reach a unanimous verdict as to this offense, then you must consider whether the defendant is guilty or not guilty of the included offense of (*included offense*).
> A person commits the offense of (*included offense*) if he/she (*track statutory language*).
> There are (*number*) material elements of this offense, each of which the prosecution must prove beyond a reasonable doubt.
> These (*number*) elements are:

Hawai'i Standard Jury Instructions Criminal (July 2000).

16. In relevant part the court charged the jury as follows:
> The Defendant . . . is charged with the offense of Robbery in the First Degree.
> A person commits the offense of Robbery in the First Degree if, . . .
> . . . .

Court's Supplemental Instruction No. 1.
> If and only if you find the defendant not guilty of the offense of Robbery in the First Degree or you are unable to reach a unanimous verdict as to that offense, then you must determine whether the defendant is guilty or not guilty of the included offense of Robbery in the Second Degree.
> . . . .

Court's Supplemental Instruction No. 5.
> If and only if you find the defendant not guilty of the offense of Robbery in the First Degree or you are unable to reach a unanimous verdict as to that offense, and you find the defendant not guilty of the offense of Robbery in the Second Degree or you are unable to reach a unanimous verdict as to that offense, then you must determine whether the defendant is guilty or not guilty of the included offense of Assault in the First Degree.
> . . . .

Court's Supplemental Instruction No. 6.
> If and only if you find the defendant not guilty of the offense of Robbery in the First Degree or you are unable to reach a unanimous verdict as to that offense, and you find the defendant not guilty of the offense of Robbery in the Second Degree or you are unable to reach a unanimous verdict as to that offense, and you find the defendant not guilty of the offense of Assault in the First Degree or you are unable to reach a unanimous verdict as to that offense, then you must determine whether the defendant is guilty or not guilty of the included offense of Assault in the Second degree.
> A person can commit the offense of Assault in the Second Degree in two distinct ways. . . .
> . . . .
> You may not find the Defendant guilty of the offense of Assault in the Second Degree unless both elements of at least one of the forms of this offense have been proved beyond a reasonable doubt by the prosecution.
> . . . .

Court's Supplemental Instruction No. 7A.
> You may bring in one of the following verdicts:
> 1. Not guilty; or
> 2. Guilty as charged; or
> 3. Guilty of the included offense of Robbery in the Second Degree; or
> 4. Guilty of the included offense of Assault in the First Degree; or
> 5. Guilty of the included offense of Assault in the Second Degree.
> Your verdict must be unanimous.

Court's Supplemental Instruction No. 14.

inclined), will guide the jury in an orderly consideration of the alternative included offenses presented to it.[17]

## VIII.

█ In conjunction with his challenge to the giving of the second degree robbery instruction, Petitioner contends that "[g]iven the State's evidence . . ., there was no showing that [Petitioner] was acting 'recklessly' as opposed to 'intentionally.' " On the contrary, we regard the evidence as being supportive of such a "showing." In relevant part HRS § 702-206(3) (1993) states that a person acts "recklessly" under the following circumstances:

(a) A person acts recklessly with respect to his [or her] conduct when he [or she] consciously disregards a substantial and unjustifiable risk that the person's conduct is of the specified nature.

. . . .

(c) A person acts recklessly with respect to a result of [his or her] conduct when he [or she] consciously disregards a substantial and unjustifiable risk that his [or her] conduct will cause such a result.

At trial, evidence was elicited from Hammons and Goods that Petitioner was consuming alcoholic beverages with Kamoku. Goods and Morris testified that Petitioner appeared intoxicated when he approached Morris and challenged him to a fight. Officer John Jervis related that when he approached Petitioner, "[Petitioner] appeared intoxicated and [I] smelled some odor and [sic] alcohol on his breath." The parties stipulated that Petitioner was given an intoxilyzer test at about 12:55 a.m. on April 13, 1997 and the test "showed that [Petitioner's] blood alcohol content was .172," "approximately twice the legal limit if [Petitioner] was driving an automobile."

From the foregoing evidence, it may reasonably be inferred that Petitioner was under the influence of intoxicating liquor at the time of the incident. As a consequence of such influence, Petitioner may have possessed a reckless, rather than an intentional, state of mind with respect to his conduct, the result of his conduct, or both.[18] Under such circumstances, the jury could believe that Petitioner consciously disregarded the risk that his conduct would be of such a nature as to be capable of producing or resulting in bodily injury to Kamoku, which was "serious," as defined in HRS § 707-700 (1993).[19] Consequently, there was a rational basis in the evidence to support the conclusion that Petitioner acted recklessly in inflicting such injuries and, thus, for the court to give a second degree robbery instruction. Further, based upon the testimony of the witnesses and the intoxilyzer results, the court, applying *Kupau*, could determine such evidence was of greater weight than evidence supporting the charge that Petitioner acted intentionally.

## IX.

█ As his last argument, Petitioner maintains the court erred in denying his motion for judgment of acquittal because "there was insufficient evidence that [he] was [acting] in the course of committing theft."

---

**17.** To some extent, the presumption that jurors follow instructions is "a reasonable practical accommodation of the interests of the state and the defendant." *Holbron,* 80 Hawai'i at 46, 904 P.2d at 931 (internal quotation marks and citations omitted). "This court has repeatedly invoked this 'presumption.' " *Id. Kupau* did refer to the risk that "[t]he jury, if it cannot agree on the basic issue of guilty, may seek the course of least resistance in the jury room and unjustly convict on the lesser offense instead of forthrightly acquitting." 76 Hawai'i at 394 n. 11, 879 P.2d at 499 n. 11.

However, as with every other charge to the jury, for example, the presumption of innocence and the prosecution's burden of proof beyond a reasonable doubt, the belief that the jury will adhere to instructions such as those pertaining to included offenses is buttressed by trial safeguards. These safeguards include voir dire in jury selection, the sanctity of the jurors' oath, the trial court's approbation of the instructions, and counsels' opportunity to argue the application of the instructions to the case.

**18.** Petitioner did not raise an intoxication defense. *See* HRS § 702-230(2) (1993).

**19.** HRS § 707-700 defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

He declares that: (1) after Kamoku initially gave him money, there is no evidence that Kamoku had any money remaining; (2) although Hammons testified at trial that she had heard Petitioner demanding more money from Kamoku, she had previously said at the preliminary hearing that she could not hear Petitioner; (3) "[n]one of the [prosecution]'s eyewitnesses saw [him] take or remove anything from Kamoku"; and (4) none of Kamoku's property was recovered from Petitioner. Despite Petitioner's contentions, we conclude that there was substantial evidence that Petitioner was "in the course of committing theft" when he inflicted serious bodily injury on Kamoku.[20]

▮▮▮▮ When reviewing the denial of a motion for judgment of acquittal,

we employ the same standard that a trial court applies to such a motion, namely, whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt. Sufficient evidence to support a prima facie case requires substantial evidence as to every material element of the offense charged. Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Under such a review, we give full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact.

*State v. Jenkins,* 93 Hawai'i 87, 99, 997 P.2d 13, 25 (2000) (internal quotation marks and citations omitted).

As to Petitioner's contention (1), we observe that, assuming *arguendo* Kamoku had no money left at the time of the assault, the other items he had possessed were still missing. As to contention (2), any inconsistency in Hammons's testimony was resolved by the jury. Hammons related at trial that she heard Petitioner asking for more money while choking Kamoku.[21] On cross-examination, Hammons admitted that she told the grand jury she could not hear Petitioner.[22] However, on redirect examination by the prosecution, Hammons confirmed that her written statement to the police on the night of the incident reported that Petitioner was yelling for money when he choked Kamoku,[23] and her testimony to the "grand jury" [sic] was that Petitioner mentioned to Kamoku "something about money."

▮▮▮▮ The credibility of a witness such as Hammons and the weight to be given her testimony are matters within the jury's province. The verdict indicates the jury resolved any inconsistencies in Hammons's testimony in favor of the prosecution. We must view

---

20. In his certiorari application, Petitioner does not assert that no assault took place.

21. At trial, Hammons testified as follows:
    Q. [PROSECUTOR] Okay. Now—and you're positive that the person that you saw choking [Kamoku] and asking him for money, asking him for more money, was [Petitioner], the person you identified in court today?
    A. Yes.

22. Hammons testified as follows:
    Q. [DEFENSE COUNSEL] Okay. And was [Petitioner] yelling?
    And your answer at that time was: [Petitioner] was saying something. I couldn't hear. Is that correct?
    A. True.

23. The following redirect examination took place:

    Q. [PROSECUTOR] Talking about, I mean, you mention about the—that you saw that [Petitioner] was choking [Kamoku]; correct?
    A. Yes.
    Q. But in your statement you also stated that [Petitioner] was choking [Kamoku], and [Petitioner] was yelling he wanted money; isn't that true?
    A. Yes.
    Q. That's also in the statement that you wrote out, I guess, at the scene?
    A. Yes.
    Q. That you signed 11:15 p.m. that night?
    A. Yes.
    Q. And you did tell the grand jury [sic] something about money; correct? That that's what [Petitioner] was stating to [Kamoku]?
    A. Yes.

the evidence in a light most favorable to the prosecution, giving *full* recognition to the jury's discretion over those matters falling within its province. *See Jenkins,* 93 Hawai'i at 99, 997 P.2d at 25. *See also State v. Chen,* 77 Hawai'i 329, 338, 884 P.2d 392, 401 (1994) (maintaining that it was jury's province to accept or reject part or all of the witness testimony, in concluding that accident resulted in a pedestrian's death); *State v. Freitas,* 62 Haw. 17, 21, 608 P.2d 408, 411 (1980) (giving full right of the jury to determine credibility, weigh the evidence, and draw evidence therefrom, the jury could fairly conclude that the accused was sane beyond a reasonable doubt); *State v. Unea,* 60 Haw. 504, 511, 591 P.2d 615, 620 (1979) (holding that court should not invade the jury's province of determining credibility of witnesses and weight of the evidence); *State v. Stuart,* 51 Haw. 656, 659, 466 P.2d 444, 446 (1970) (stating that the jury could have inferred that defendant meant to deceive, and it was a function of the jury to determine whom to believe); *State v. Chun,* 93 Hawai'i 389, 397, 4 P.3d 523, 531 (App.2000) (explaining that it was within the jury's province to weigh and draw justifiable inferences from officer's testimony) (citing *State v. Elmaleh,* 7 Haw.App. 488, 494, 782 P.2d 886, 890, *cert. denied,* 70 Haw. 666, 796 P.2d 502 (1989)). Doing so, we cannot conclude the court erred in denying the motion for judgment of acquittal on this ground.

**B.**

As to contentions (3) and (4), the fact that no trial witness saw Petitioner take anything from Kamoku or that none of Kamoku's property was recovered from Petitioner would not be dispositive of the claim that Petitioner was not engaged in the course of committing theft. HRS § 708-841(1)(c) provides that "[a] person commits the offense of robbery in the second degree if, in the course of committing theft ... [t]he person recklessly inflicts serious bodily injury upon another." In defining the phrase "in the course of committing theft," HRS § 708-842 states in part that "[a]n act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft, in the commission of theft, or in the flight after the attempt or commission." The phrase "in the course of committing a theft ... has been used to describe the time during which the threatening conduct must occur in order to constitute robbery." *Model Penal Code and Commentaries* § 222.1 commentary at 99 (Official Draft and Revised Comments 1980). Consistent with HRS § 708-842, the court instructed the jury that

> [a]n act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft, in the commission of theft, or in the flight after the attempt or commission.[24]

> A person attempts to commit theft if he [or she] intentionally engages in conduct which, under the circumstances as he [or she] believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his [or her] commission of theft.

> A person commits theft if he [or she] obtains or exerts unauthorized control over the property of another with intent to deprive the person of the property.

From the evidence adduced, the jury could have inferred that there was "an attempt to commit theft" or "the commission of theft." Kamoku reported that he had a wallet, money, food stamps, an identification card, and a bus pass. Hammons testified she observed Petitioner demand more money from Kamoku,[25] choke him, and kick him. Morris saw

---

24. The court did not further instruct or define the "flight" portion of HRS § 708-842, apparently because there was no rational basis in the evidence supporting the infliction of injury in such a circumstance. No question was raised concerning the requirement of any unanimity instruction, *see State v. Arceo,* 84 Hawai'i 1, 33, 928 P.2d 843, 875 (1996), regarding the instruction as it related to the phrase "in the course of committing a theft."

25. At trial, Hammons testified as follows as to her assertion that she heard Petitioner ask Kamoku for more money:

> Q. [PROSECUTOR] ... What did you observe or hear at this point?
> A. [HAMMONS] [Petitioner] was asking for money, asking [Kamoku] for money.
> Q. Okay. When you say "asking for money," what do you mean? What did he say?

Kamoku lying on the ground and Petitioner walking away accompanied by a friend. After Petitioner walked away from Kamoku, Goods approached Kamoku and observed that Kamoku's right pants pocket was turned inside out. Kamoku's personal belongings were not on his person and Kamoku never recovered his possessions, although his bus pass was found at the scene of the crime.

Based on such evidence, it can be rationally inferred that, by his demand, Petitioner intended to obtain more money from Kamoku and assaulted Kamoku to accomplish that end. Consequently, "a person of reasonable caution" could conclude, because of the close temporal proximity of Petitioner's use of force, that Petitioner was engaged in either an attempt to obtain property from Kamoku or in the successful achievement of such an objective. We conclude, therefore, that there was substantial evidence to support the conclusion for either alternative as to the element that Petitioner acted "in the course of committing theft" and, hence, that the court did not err in denying Petitioner's motion for a judgment of acquittal. *See Jenkins*, 93 Hawai'i at 106, 997 P.2d at 32 (holding that proof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the defendant's conduct is sufficient to prove defendant's state of mind) (citing *State v. Sadino*, 64 Haw. 427, 430, 642 P.2d 534, 536–37 (1982)).

## X.

For the foregoing reasons, we affirm the result reached by the ICA in upholding Petitioner's June 19, 1998 conviction and sentence. However, we disagree with the ICA's reasoning as to the *Kupau* case and vacate that part of its decision inconsistent with this opinion. Finally, we direct that in jury trials beginning after the filing of this opinion, trial courts shall instruct juries on all included offenses having a rational basis in the evidence.

A. He just said he wanted, you know, he wanted more money.

Further, on redirect examination, Hammons confirmed her statement to the police on the

Concurring Opinion by LEVINSON, J.

"In order to reconcile the competing interests of the prosecution and defendants, as well as to insure that juries are appropriately instructed in criminal cases," we held, in *State v. Kupau*, 76 Hawai'i 387, 879 P.2d 492 (1994), as follows:

The trial judge must bring all included offense instructions that are supported by the evidence to the attention of the parties. The trial judge must then give each such instruction to the jury unless (1) the prosecution does not request that included instructions be given and (2) the defendant specifically objects to the included offense instructions for tactical reasons. If the prosecution does not make a request and the defendant makes a tactical objection, the trial judge must then exercise his or her discretion as to whether the included offense instructions should be given. The trial judge's discretion should be guided by the nature of the evidence presented during the trial, as well as the extent to which the defendant appears to understand the risks involved.

*Id.* at 395–96, 879 P.2d at 500–01 (footnotes omitted). By way of illustration of "the nature of the evidence" by which the trial courts were henceforth to be guided in the exercise of their discretion, we explained that,

[f]or example, although there may be sufficient evidence to support a guilty verdict as to a charged offense, if the weight of the evidence is to the contrary but supports guilt as to an included offense, the trial judge would be justified in giving an instruction regarding the included offense, even if it has not been requested by the prosecution and the defendant has expressly objected to it for tactical reasons.

*Id.* at 396 n.14, 879 P.2d at 501 n.14.

With the benefit of hindsight, I am now of the view that the roadmap drawn in *Kupau* by which the trial courts were to navigate the proper exercise of their discretion in instructing the jury regarding supportable in-

night of the incident that Petitioner asked Kamoku for money. *See supra* note 21.

cluded offenses, when the prosecution did not request that any such instructions be given and the defendant tactically objected to them, is at best unhelpful, at worst confusing, and probably incompatible with the proposition that " 'the ultimate responsibility properly to instruct the jury ... [lies] with the circuit court and not with trial counsel.' " *Id.* at 395, 879 P.2d at 500 (quoting *Briones v. State,* 74 Haw. 442, 472–73, 848 P.2d 966, 980 (1993) (Levinson, J., concurring)) (brackets in original).

I agree with the majority that the better view was unanimously expressed by the California Supreme Court in *People v. Barton,* 12 Cal.4th 186, 47 Cal.Rptr.2d 569, 906 P.2d 531 (1995), which vacated the California Court of Appeal's decision—*People v. Barton,* 15 Cal. Rptr.2d 649 (1993)—that we cited with approval sixteen months earlier in *Kupau.* That view is the following, to which I now subscribe:

> In a criminal trial, it is ordinarily the trial court's duty to instruct the jury not only on the crime with which the defendant is charged, but also on any lesser offense that is both included in the offense charged and shown by the evidence to have been committed.
>
> . . . .
>
> We conclude that a defendant may not invoke tactical considerations to deprive the jury of the opportunity to consider whether the defendant is guilty of a lesser offense included within the crime charged. A trial court should instruct the jury on any lesser included offense supported by the evidence, regardless of the defendant's opposition. . . .
>
> . . . .
>
> "Our courts are not gambling halls but forums for the discovery of truth." (*Peo-*

*ple v. St. Martin* (1970) 1 Cal.3d 524, 533, 83 Cal.Rptr. 166, 463 P.2d 390.) Truth may lie neither with the defendant's protestations of innocence nor with the prosecution's assertion that the defendant is guilty of the offense charged, but at a point between these two extremes: the evidence may show that the defendant is guilty of some intermediate offense included within, but lesser than, the crime charged. A trial court's failure to inform the jury of its option to find the defendant guilty of the lesser offense would impair the jury's truth–assessment function. Consequently, neither the prosecution nor the defense should be allowed, based on their trial strategy, to preclude the jury from considering guilt of a lesser offense included in the crime charged. To permit this would force the jury to make an "all or nothing" choice between conviction of the crime charged or complete acquittal, thereby denying the jury the opportunity to decide whether the defendant is guilty of a lesser included offense established by the evidence.

*Barton,* 906 P.2d at 532, 536 (footnote omitted).[1]

Accordingly, I join in the majority's holding "that, in jury trials beginning after the filing date of this opinion, the trial courts shall instruct juries as to any included offenses having a rational basis in the evidence without regard to whether the prosecution requests, or the defense objects to, such an instruction." Majority opinion at 407, 16 P.3d at 248 (footnote omitted).

---

1. The *Barton* court qualified the foregoing analysis with the caveat that

   [a] trial court need not, however, instruct on lesser included offenses when the evidence shows that the defendant is either guilty of the crime charged or not guilty of any crime (for example, when the only issue at trial is the defendant's identity as the perpetrator). Because in such a case "there is no evidence that the offense was less than that charged ([*People v.] Sedeno,* [10 Cal.3d 703, 112 Cal.Rptr. 1, 518 P.2d 913 (1974)]), the jury need not be instructed on any lesser included offense.

906 P.2d at 536 n.5. I am not certain that I understand what footnote five means, and so I do not necessarily endorse it. The caveat would appear, however, to be the functional equivalent of the indisputable proposition that the trial court "is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense," *see* HRS § 701–109(5) (1993), combined with the trial court's prerogative of granting a motion for judgment of acquittal, *see* Hawai'i Rules of Penal Procedure Rule 29 (2000).